**KOLLER LAW LLC**
David M. Koller, Esq. (90119)
Jordan D. Santo, Esq. (320573)                         *Counsel for Plaintiff*
2043 Locust Street, Suite 1B
Philadelphia, PA 19103
T: (215) 545-8917
F: (215) 575-0826
davidk@kollerlawfirm.com
jordans@kollerlawfirm.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JENNA BRESKE,** | : | **Civil Action No.** 26-3117 |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **Complaint and Jury Demand** |
| | : | |
| **TARGET CORPORATION,** | : | |
| **Defendant.** | : | |

### CIVIL ACTION

Plaintiff, Jenna Breske (hereinafter "Plaintiff"), by and through her attorney, Koller Law, LLC, bring this civil matter against Target Corporation (hereinafter "Defendant"), for violations of the Americans with Disabilities Act of 1990, as amended ("ADA"), the Pennsylvania Human Relations Act ("PHRA") and the Philadelphia Fair Practices Ordinance ("PFPO"). In support thereof, Plaintiff avers as follows:

### THE PARTIES

1. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

2. Plaintiff is an adult individual residing in Philadelphia, PA.

3. Upon information and belief, Defendant Target Corporation is a general merchandise retailer with a location at 1020 S Broad Street, Philadelphia, PA 19146 and corporate headquarters located at 1000 Nicollet Mall, Minneapolis, MN 55403.

4. At all times relevant hereto, Defendant employed managers, supervisors, agents, and employees who Plaintiff alleges had the authority to make decisions concerning Plaintiff's employment. In making said decisions, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

5. At all times relevant hereto, Defendant employed managers, supervisors, agents, and employees who acted directly or indirectly in the interest of the employer. In so acting, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

## JURISDICTION AND VENUE

6. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

7. The Court may properly maintain personal jurisdiction over Defendant because the Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction and comply with traditional notions of fair play and substantial justice, thus satisfying the standard set forth by the United States Supreme Court in International Shoe Co. v. Washington, 326 U.S. 310 (1945) and its progeny.

8. The Court may exercise original subject-matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal law.

9. The Court may also maintain supplemental jurisdiction over state law claims set forth herein pursuant to 28 U.S.C. § 1367(a) and Rule 18(a) of the Federal Rules of Civil Procedure because they are sufficiently related to one or more claims within the Court's original jurisdiction that they form part of the same case or controversy.

10. Venue is properly laid in the Eastern District of Pennsylvania pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(b)(2) because Plaintiff is domiciled in this judicial district, the Defendant is located in this judicial district and because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

11. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

12. Plaintiff exhausted her administrative remedies under the ADA, PHRA and the PFPO.

13. On or about July 11, 2024, Plaintiff timely filed a Charge of Discrimination ("Charge") with the U.S. Equal Employment Opportunity Commission ("EEOC") alleging disability discrimination and retaliation against Defendant.

14. The Charge was assigned a Charge Number 530-2025-01395 and was dual filed with the Pennsylvania Human Relations Commission ("PHRC").

15. The EEOC issued Plaintiff a Dismissal and Notice of Rights ("Right to Sue") via request relative to the Charge and that Notice is dated February 6, 2026.

16. Prior to the filing of this action, Plaintiff notified the EEOC of her intent to proceed with a lawsuit in federal court.

17. Plaintiff files the instant Complaint within ninety (90) days of her receipt of her Right to Sue in this matter, as it relates to her federal law claims, and more than one year after filing her Charge, but within two (2) years of the issuance of the Right to Sue in this matter as it relates to her PHRA and PFPO claims.

18. Plaintiff has exhausted her administrative remedies as to the allegations of this Complaint.

## MATERIAL FACTS

### PLAINTIFF'S EMPLOYMENT HISTORY

19. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

20. On or about April 4, 2024, Defendant hired Plaintiff in the position of Team Member.

21. Plaintiff was well qualified for her position and performed well.

### PLAINTIFF IS DISABLED AND NOTIFIED DEFENDANT OF HER DISABILITIES

22. Plaintiff has the serious health conditions of Generalized Anxiety Disorder ("GAD") and panic attacks which are considered to be disabilities under the Americans with Disabilities Act of 1990, as amended ("ADA"), the Pennsylvania Human Relations Act ("PHRA") and the Philadelphia Fair Practices Ordinance ("PFPO").

23. The major life activities affected by GAD and panic attacks include, but are not limited to, concentrating, communicating and working.

24. Upon her hire, Plaintiff immediately notified Enya Last Name Unknown ("LNU"), Human Resources Representative, Malcolm LNU, Store Director, and Mariah LNU, Team Lead, of her disabilities.

### PLAINTIFF WAS INVOLVED IN AN INCIDENT IN WHICH A CUSTOMER SCREAMED AND BERATED DEFENDANT'S EMPLOYEES

25. On or about June 29, 2024, an incident occurred in Defendant's store.

26. A customer began to scream at and berate Defendant's employees at the registers of the store.

27. Plaintiff attempted to mitigate the situation by stepping up to calm down the customer.

28. Eventually, Will LNU, Team Lead On Duty, was called to address the incident.

### PLAINTIFF SUFFERED A PANIC ATTACK AS A RESULT OF THE INCIDENT

29. Will told Plaintiff to go in the back employee's section of the store.

4

30. Once in the back, Plaintiff began to have a panic attack due to the incident.

31. Plaintiff started shaking and breathing heavily.

32. Plaintiff called her friend on the phone to calm her down.

## WILL DEMANDED THAT PLAINTIFF RETURN TO WORK, DESPITE HER PANIC ATTACK

33. Once Will came to the back, Plaintiff expressed to Will that she was extremely upset about the situation.

34. Nonetheless, Will demanded that Plaintiff go back to work because the store was about to close.

35. Plaintiff said she needed two (2) minutes to collect herself because she was having a panic attack due to her disabilities.

## WILL ACCUSED PLAINTIFF OF HANDLING THE SITUATION SHORTLY AND INSTRUCTED HER TO REPORT BACK TO WORK ON HER NEXT SCHEDULED SHIFT

36. Immediately after, Will told Plaintiff to meet her in his office.

37. Plaintiff complied.

38. In the office, Will accused Plaintiff of handling the situation poorly and raising her voice at the customer.

39. Plaintiff told Will she did not do this and, instead, tried to deescalate the situation.

40. Will then told Plaintiff to call a different Team Lead so they could get yelled at instead of Will or Plaintiff taking the blame.

41. Will then told Plaintiff that he would try to close the store early and Plaintiff should just come back for her next scheduled shift on July 1, 2024.

42. Will stated he would talk to Human Resources about the situation.

## PLAINTIFF COMPLAINED TO MALCOLM ABOUT WILL'S CONDUCT WHILE SHE WAS EXPERIENCING A PANIC ATTACK

43. On or about July 1, 2024, Plaintiff reported to her next scheduled shift.

44. During her shift, Plaintiff pulled Malcolm aside and filed a verbal complaint with Malcolm about Will's conduct.

45. Plaintiff complained that she was having a panic attack, informed Will of this, was crying and was visibly shaking in front of Will.

46. Yet, Plaintiff complained to Malcolm that Will yelled at her and blamed her for the situation.

47. Plaintiff voiced her concern that Will would be mad at her for trying to get her symptoms under control that day.

48. Malcolm stated that he had not heard about the situation yet and assured Plaintiff that she would not be retaliated against for the situation.

49. Malcolm told Plaintiff to just continue to work her shift.

## PLAINTIFF SAW THAT WILL LISTENED TO HER COMPLAINT REGARDING HIS DISCRIMINATORY CONDUCT

50. When Plaintiff left the office, she saw Will standing outside of the office listening to their conversation.

## PLAINTIFF ASKED HUMAN RESOURCES WHO WAS CLOSING THE STORE AND WAS INFORMED IT WAS A DIFFERENT TEAM LEAD

51. Right after, Plaintiff went to Human Resources to see who was closing the store that night.

52. Human Resources told Plaintiff that a different Team Lead was closing the store that night.

## WILL ABRUPTLY TERMINATED PLAINTIFF

53. Approximately ten (10) minutes later, Will found Plaintiff in the store and pulled her aside.

54. Will abruptly terminated Plaintiff's employment.

55. Will told Plaintiff that she was still on her probationary period, and because of this she was immediately terminated for how she handled the situation on June 29, 2024.

56. Will also claimed that Plaintiff had "absences" during her probationary period, which had never been brought up before.

57. Plaintiff had never called out of work before.

58. Plaintiff's probationary period was set to end just two (2) days later, on or about July 3, 2024.

59. Will told Plaintiff that she needed to leave the store immediately.

60. Will prevented Plaintiff from speaking with Malcolm before she left the store, saying she would be escorted out if she did not leave.

61. Importantly, according to Defendant's policies, Will did not have the power to terminate Plaintiff without Malcolm's permission.

62. Plaintiff left the store as instructed.

## PLAINTIFF ATTEMPTED TO COMPLAIN TO MALCOLM REGARDING HER TERMINATION, BUT DID NOT RECEIVE A RESPONSE

63. Plaintiff attempted to call Malcolm to discuss her termination.

64. Plaintiff could not reach him and he did not return her calls.

## PLAINTIFF CALLED DEFENDANT'S CORPORATE HUMAN RESOURCES TO APPEAL HER TERMINATION, BUT DID NOT RECEIVE A RESPONSE

65. Plaintiff also called Defendant's Corporate Human Resources to appeal her termination decision on or about July 9, 2024.

66. Defendant's Corporate Human Resources said it would reach back out to Plaintiff in five to six (5-6) business days.

67. However, Defendant's Corporate Human Resources did not contact Plaintiff.

### PLAINTIFF CALLED DEFENDANT'S CORPORATE HUMAN RESOURCES AND WAS INFORMED THAT HER TERMINATION WAS UPHELD

68. Plaintiff called back two (2) weeks later, after not receiving a response.

69. At this time, Defendant's Corporate Human Resources upheld the termination decision.

70. Defendant discriminated against Plaintiff due to her disabilities and retaliated against her in violation of the ADA, the PHRA and the PFPO.

71. Defendant's acts and/or omissions were willful or performed with reckless disregard to Plaintiff's federal statutorily protected rights.

### COUNT I – DISABILITY DISCRIMINATION AMERICANS WITH DISABILITIES ACT OF 1990, AS AMENDED

72. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

73. Plaintiff is a "qualified individual with a disability" as that term is defined under the ADA because Plaintiff has, or had at all times relevant hereto, disabilities that substantially limits or limited one or more major life activities or because Plaintiff had a record of such an impairment or because Plaintiff was regarded as and/or perceived by Defendant and its agents as being disabled.

74. Plaintiff was qualified to perform the job.

75. Plaintiff was subject to an adverse employment action, including, but not limited to termination.

76. Circumstances indicated that Plaintiff's disabilities were the reason for the adverse employment action.

77. Defendant did not have a legitimate non-discriminatory reason for Plaintiff's adverse employment actions.

78. Plaintiff's disabilities motivated Defendant's decision to take adverse actions against Plaintiff.

79. The purported reason for Defendant's decision is pretextual.

80. Others similarly situated but outside of Plaintiff's protected class were treated more favorably.

81. As a result of Defendant's unlawful disability discrimination, Plaintiff has suffered damages as set forth herein.

82. Defendant's conduct was willful or with reckless disregard to Plaintiff's federally protected statutory rights.

WHEREFORE, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

### COUNT II – DISABILITY DISCRIMINATION
### PENNSYLVANIA HUMAN RELATIONS ACT

83. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

84. Plaintiff is a "qualified individual with a disability" as that term is defined under the PHRA because Plaintiff has, or had at all times relevant hereto, disabilities that substantially limits or limited one or more major life activities or because Plaintiff had a record of such an impairment or because Plaintiff was regarded as and/or perceived by Defendant and its agents as being disabled.

85. Plaintiff was qualified to perform the job.

86. Plaintiff was subject to an adverse employment action, including, but not limited to termination.

9

87. Circumstances indicated that Plaintiff's disabilities were the reason for the adverse employment action.

88. Defendant did not have a legitimate non-discriminatory reason for Plaintiff's adverse employment actions.

89. Plaintiff's disabilities motivated Defendant's decision to terminate Plaintiff.

90. The purported reason for Defendant's decision is pretextual.

91. Others similarly situated but outside of Plaintiff's protected class were treated more favorably.

92. The above actions by Defendant also constitute a failure to accommodate and a failure to engage in the required interactive process.

93. As a result of Defendant's unlawful disability discrimination, Plaintiff has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## COUNT III – DISABILITY DISCRIMINATION
## PHILADELPHIA FAIR PRACTICES ORDINANCE

94. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

95. Plaintiff is a "qualified individual with a disability" as that term is defined under the PFPO because Plaintiff has, or had at all times relevant hereto, disabilities that substantially limits or limited one or more major life activities or because Plaintiff had a record of such an impairment or because Plaintiff was regarded as and/or perceived by Defendant and its agents as being disabled.

96. Plaintiff was qualified to perform the job.

97. Plaintiff was subject to an adverse employment action, including, but not limited to

termination.

98. Circumstances indicated that Plaintiff's disabilities were the reason for the adverse employment action.

99. Defendant did not have a legitimate non-discriminatory reason for Plaintiff's adverse employment actions.

100. Plaintiff's disabilities motivated Defendant's decision to terminate Plaintiff.

101. The purported reason for Defendant's decision is pretextual.

102. Others similarly situated but outside of Plaintiff's protected class were treated more favorably.

103. The above actions by Defendant also constitute a failure to accommodate and a failure to engage in the required interactive process.

104. As a result of Defendant's unlawful disability discrimination, Plaintiff has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

**COUNT IV – RETALIATION**
**<u>AMERICANS WITH DISABILITIES ACT OF 1990, AS AMENDED</u>**

105. Plaintiff incorporates by reference each allegation contained in the preceding paragraphs as if the same were set forth more fully at length herein.

106. Plaintiff engaged in activity protected by the ADA.

107. Thereafter, Defendant took adverse employment actions against Plaintiff, including, but not limited to, termination.

108. There exists a causal connection between Plaintiff's participation in the protected activity and the adverse employment action.

109. Defendant's conduct/omission was willful or done with reckless disregard to Plaintiff's federally protected statutory rights.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

## COUNT V – RETALIATION
## PENNSYLVANIA HUMAN RELATIONS ACT

110. Plaintiff incorporates by reference each allegation contained in the preceding paragraphs as if the same were set forth more fully at length herein.

111. Plaintiff engaged in activity protected by the PHRA.

112. Thereafter, Defendant took adverse employment actions against Plaintiff, including, but not limited to, termination.

113. There exists a causal connection between Plaintiff's participation in the protected activity and the adverse employment action.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

## COUNT VI – RETALIATION
## PHILADELPHIA FAIR PRACTICES ORDINANCE

114. Plaintiff incorporates by reference each allegation contained in the preceding paragraphs as if the same were set forth more fully at length herein.

115. Plaintiff engaged in activity protected by the PFPO.

116. Thereafter, Defendant took adverse employment actions against Plaintiff, including, but not limited to, termination.

117. There exists a causal connection between Plaintiff's participation in the protected activity and the adverse employment action.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, Jenna Breske, requests that the Court grant her the following relief against Defendant:

(a)     Compensatory damages;

(b)     Punitive damages;

(c)     Emotional pain and suffering;

(d)     Reasonable attorneys' fees;

(e)     Recoverable costs;

(f)     Pre and post judgment interest;

(g)     An allowance to compensate for negative tax consequences;

(h)     A permanent injunction enjoining Defendant, its directors, officers, employees, agents, successors, heirs and assigns, and all persons in active concert or participation with it, from engaging in, ratifying, or refusing to correct, employment practices which discriminate in violation of the ADA, the PHRA and the PFPO.

(i)     Order Defendant to institute and implement, and for its employees, to attend and/or otherwise participate in, training programs, policies, practices and programs which provide equal employment opportunities;

(j)     Order Defendant to remove and expunge, or to cause to be removed and expunged, all negative, discriminatory, and/or defamatory memoranda and documentation from Plaintiff's record of employment, including, but not limited, the pre-textual reasons cited for its adverse actions, disciplines, and termination; and

(k)     Awarding extraordinary, equitable and/or injunctive relief as permitted by law, equity and the federal statutory provisions sued hereunder, pursuant to Rules 64 and 65 of the Federal Rules of Civil Procedure.

## JURY TRIAL DEMAND

Demand is hereby made for a trial by jury as to all issues.

## CERTIFICATION

I hereby certify that to the best of my knowledge and belief the above matter in controversy is not the subject of any other action pending in any court or of a pending arbitration proceeding, nor at the present time is any other action or arbitration proceeding contemplated.

RESPECTFULLY SUBMITTED,

**KOLLER LAW, LLC**

Date: May 7, 2026           **By:**  */s/David M. Koller*
David M. Koller, Esquire
Jordan D. Santo, Esquire
2043 Locust Street, Suite 1B
Philadelphia, PA 19103
215-545-8917
davidk@kollerlawfirm.com
jordans@kollerlawfirm.com

*Counsel for Plaintiff*